IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : CRIMINAL NO. 2006-29 |
| GLENN PETERSEN<br>TREVOR DORSETT | : |

## MEMORANDUM

### I. INTRODUCTION

Before the court are Defendants' motions and supplemental motions to suppress all evidence seized by the Virgin Islands Police Department ("V.I.P.D.") on or about December 5, 2003. The court has conducted a hearing on the matter, and it has been fully briefed. On February 15, 2008, the court issued an order denying the defendants' motions to suppress. The reasons are set forth below.

### II. PROCEDURAL HISTORY

Glenn Petersen filed a Motion and Memorandum of Law to Suppress Evidence (Docket No. 105) on November 2, 2007, seeking to suppress the crack cocaine and the cocaine seized by officers of the V.I.P.D. on December 5, 2003, as well as any statements made to the officers. Trevor Dorsett filed a Motion to Suppress (Docket No. 103) on November 5, 2007 seeking to suppress the crack cocaine and cocaine seized. This court held a suppression hearing on November 7, 2007. During the suppression hearing, the Government presented five witnesses. The four V.I.P.D. officers present during the stop in question (Angela Brown, Steve Gibbons,

M.L. Proctor and Dennis Vanterpool) testified, in addition to Detective Mark Leslie Thomas, Sr. The defendants filed supplemental motions to suppress on February 4, 2008.

## III. FINDINGS OF FACT

Having reviewed the testimony presented at the November 7, 2007 suppression hearing, the motions to suppress, the supplemental motions and the Government's response in opposition thereto, the court makes the following findings of fact.

On December 5, 2003, Officers Brown and Gibbons conducted camera surveillance of Dorsett and Petersen in St. John, U.S.V.I. Transcript of November 7, 2007 Suppression Hearing at 23. Officer Brown observed Petersen enter a bar and exit holding a drink and an opaque plastic bag similar to a grocery bag. 2007 Transcript at 23. Petersen shifted the bag between his hands, eventually handing it to Dorsett who carried it for some time. 2007 Transcript at 24. When Officers Brown and Gibbons lost sight of the defendants on the video monitor, they went outside to continue surveillance on foot and saw the defendants get into a red vehicle. 2007 Transcript at 25. Officer Brown sent a radio transmission stating that she and Officer Gibbons were going to monitor the vehicle and "two suspicious males" and giving a description of the vehicle and its location. 2007 Transcript at 25, 91. Officer Proctor heard this transmission, located the vehicle and observed that it failed to stop at a stop sign in Cruz Bay Town going northward. 2007 Transcript at 91-92. Officer Proctor made a radio call for assistance to Officers Brown and Gibbons because he was going to make a traffic stop of the defendants' vehicle in the vicinity of the National Park or on the top of the hill on the North Shore Road.[1] 2007 Transcript

---

[1] While the court will refer to the red vehicle driven by Dorsett, in which Petersen was a passenger, as "the defendants' vehicle", this is for identification purposes only, and not to convey

at 26.

Officer Proctor continued to follow defendants' vehicle which turned left down into the National Park. 2007 Transcript at 93. He observed the driver, Dorsett, throw a clear plastic bag containing a white substance out of the driver's side window into the gut[2] along the left side of the road. 2007 Transcript at 93.

Officer Proctor stopped at the entrance of the North Shore National Park, keeping the discarded small plastic bag with the white substance in his sight so nobody could interfere with it. 2007 Transcript at 94. The defendants' vehicle continued into the Park, but Officer Proctor knew that there was a dead-end and no way out but to come back to him. 2007 Transcript at 94. Officers Brown and Gibbons went down into the Park behind defendants' vehicle. 2007 Transcript at 27. Due to the dead-end road, defendants turned around and headed out of the Park. 2007 Transcript at 27. As the defendants headed toward Officer Proctor, he turned on his strobe lights and stopped their vehicle. 2007 Transcript at 65, 94. The vehicle of Brown and Gibbons stopped behind defendants' vehicle. 2007 Transcript at 94.

Officer Proctor made a radio call to check the license tags on defendants' vehicle. 2007 Transcript at 118. Then, for his safety, Officer Proctor ordered the defendants out of their vehicle and directed them to stand at its front on opposite sides. 2007 Transcript at 37, 57-58. Officers Brown and Gibbons stayed with their vehicle. 2007 Transcript at 65. Officer Gibbons was behind the door of his vehicle, with his weapon drawn, but not pointed at the defendants. 2007 Transcript at 70, 84.

---

any finding of a property or possessory interest by either defendant in the vehicle.

[2] A gut is a drainage ditch lined with stone shale. 2007 Transcript at 134.

Officer Vanterpool arrived at the scene in a third police vehicle. Officer Proctor directed him to retrieve the small plastic bag from the gut. 2007 Transcript at 65. Officer Vanterpool retrieved the small plastic bag containing a white substance, which he believed, based on its appearance and smell, to be crack cocaine. 2007 at 97, 143. He shared his conclusion with the other officers. 2007 Testimony at 29. Officers Proctor and Vanterpool then went towards the defendants, intending to pat them down for officers' safety. 2007 Transcript at 66, 143. Officer Proctor detected the smell of marijuana coming from them. 2007 Transcript at 97-99. Officer Vanterpool's pat down of Petersen revealed marijuana on his person. 2007 Transcript at 143-44. Petersen made an unsolicited statement that he had been smoking a joint. 2007 Testimony at 100.

When Officer Vanterpool was heard to say that the white substance in the small plastic bag appeared to be crack cocaine, Officers Brown and Gibbons decided to walk around defendants' vehicle. 2007 Transcript at 66. Officer Gibbons noticed the odor of marijuana coming from defendants' vehicle. 2007 Transcript at 68, 85, 87. A smoked marijuana joint was seen in the vehicle's dash ashtray. 2007 Transcript at 86-87. Officer Brown looked into the vehicle because of the marijuana odor. 2007 Transcript at 85. She observed in the back seat the large plastic bag which she had previously seen defendants carrying. 2007 Transcript at 29. When Officer Brown asked the defendants what was in the bag, each denied knowing of what bag she spoke. 2007 Transcript at 30. Officer Brown then reached into the vehicle and removed the bag, held it up and said "This bag, whose is this bag?" 2007 Transcript at 30. Both defendants denied ownership of the bag. 2007 Transcript at 30. Officer Brown then declared, "Okay. Then it's mine." 2007 Transcript at 30.

Officer Brown placed the bag on the hood of the defendants' vehicle and searched it. 2007 Transcript at 67. Inside were two or three brick-like items wrapped in duct tape. 2007 Transcript at 56, 179. She opened one of the items, and saw that it contained a white powdery substance. 2007 at 168.

At this point, Officer Vanterpool placed defendants under arrest, read them their <u>Miranda</u> rights and handcuffed them. 2007 Transcript at 144. Defendants were then transported to the police station. 2007 Transcript at 145.

Chemical field tests at the station confirmed that the substance in the small plastic bag recovered from the gut was crack cocaine and that the substance in the large plastic bag was cocaine. 2007 Transcript at 67, 145. The defendants were formally charged. 2007 Transcript at 171.

The vehicle driven by Dorsett did not belong to him. 2007 Transcript at 174. It was a rental vehicle leased to his brother, Uric Dorsett. 2007 Transcript at 174. Uric Dorsett lent the vehicle to his brother several days before, that is, on or about December 2, 2003. 2007 Transcript at 174.

## IV. DISCUSSION

The Fourth Amendment of the United States Constitution provides for the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Defendants argue that the evidence seized during the stop, including the small plastic bag of crack cocaine and the large plastic bag containing cocaine are the products of an unreasonable search and seizure and must be suppressed. Defendant Petersen further argues that

any statements that he allegedly made during the stop should be suppressed because they were made while he was unlawfully detained.

    A.    <u>Neither defendant has standing to challenge the introduction of the plastic bag of crack cocaine.</u>

Before the court reaches the question of whether the seizure of the small plastic bag from the gut was reasonable, it must determine whether either defendant has standing to challenge the introduction of the crack cocaine. "Standing to challenge a search requires that the individual challenging the search have a reasonable expectation of privacy in the property searched and that he manifest a subjective expectation of privacy in the property searched." <u>United States v. Baker</u>, 221 F.3d 438, 441 (3d Cir. 2000)(citing <u>California v. Greenwood</u>, 486 U.S. 35, 39 (1988); <u>Rakas v. Illinois</u>, 439 U.S. 128, 144 (1978)), <u>r'hrg denied</u>, 439 U.S. 112 (1979). If the defendants abandoned the small plastic bag, they cannot assert a privacy interest in it. <u>United States v. Fulani</u>, 368 F.3d 351, 354 (3d Cir. 2004)(internal citations omitted), <u>cert. denied</u>, 543 U.S. 1091 (2005). Therefore, the question before the court is whether, from an objective viewpoint, there is clear and unequivocal evidence of intent to abandon the property. <u>Id.</u> (citing <u>United States v. Moody</u>, 485 F.2d 531, 534 (3d Cir. 1973)).

Officer Proctor observed Dorsett, the driver of the vehicle, toss a small plastic bag containing white substance out of the driver's side window which landed in the public gut along the road. The vehicle did not stop, or hesitate, but continued to travel away from the small plastic bag. The discarding of this bag was clear and unequivocal evidence of intent to abandon and actual abandonment of the item. Anyone at that point was free to pick it up. Further, there is no allegation that there was any misconduct by a police officer that rendered the abandonment

involuntary. See, e.g., United States v. Lewis, 921 F.2d 1294, 1302-03 (D.C. Cir. 1990). Simply put, Dorsett threw the bag out into a public area prior to a valid traffic stop. Officer Proctor's conduct in following their vehicle after observing a traffic violation certainly is not the kind of official conduct that rendered abandonment of the small plastic bag of crack cocaine involuntary.

Since the small plastic bag was abandoned, neither defendant has standing to seek the suppression of that evidence. Therefore, defendants' motions to suppress with respect to the crack cocaine are denied.

  B. <u>The stop was a legitimate traffic stop and subsequent expansion of scope was reasonable.</u>

Defendants argue that the stop of the vehicle was not a legitimate traffic stop and was therefore an unreasonable seizure. Stopping an automobile and detaining its passengers constitutes a "seizure" within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). As such, an automobile stop must be reasonable. "[A] traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." United States v. Delfin-Colina, 464 F.3d 392, 398 (3d Cir. 2006)(citing Whren v. United States, 517 U.S. 806, 810 (1996); Terry v. Ohio, 392 U.S. 1 (1968)).

Officer Proctor observed that the defendants' vehicle failed to stop at a stop sign. 2007 Transcript at 92. He decided not to stop the vehicle immediately because of vehicular and visitor congestion in the area of Mongoose Junction. 2007 Transcript at 93. Instead, he followed defendants' vehicle and radioed other officers to tell them of his intent to make a traffic stop outside of Town and to seek their assistance. 2007 Transcript at 93. He stopped his vehicle near

Page 7 of 17

the entrance of the National Park. 2007 Transcript at 93. The court finds that at this point Officer Proctor had specific, articulable facts that a traffic violation had occurred, and reasonably believed that a traffic stop would be valid.

Defendants argue that the traffic stop was a pretext because Officer Proctor had received a radio call from Officer Brown requesting surveillance of the defendants, describing them as "suspicious." Dorsett, however, concedes, as must Petersen, that the subjective intent of a police officer is not relevant as to this court's determination as to whether there existed sufficient objective articulable suspicion for stopping the vehicle. See, e.g., United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003); Whren, 517 U.S. at 810. The court has found that Officer Proctor observed the vehicle fail to stop at a stop sign and believed there to have been a violation of a traffic law. An insubstantial delay between the violation and the stop does not change the fact that a traffic violation occurred.[3] Here, the delay was related solely to public safety concerns previously cited.

Defendants argue that even if a traffic violation occurred, the officers did not have a reasonable, articulable suspicion of criminal activity to justify the detention. Once a car has been lawfully detained for a traffic violation, however, the police officer may order the driver as well as any passengers out of the vehicle without violating the Fourth Amendment's prohibition against unreasonable seizures. Maryland v. Wilson, 519 U.S. 408, 410, 415 (1997); Pennsylvania v. Mimms, 434 U.S. 106, 111 (1997). Therefore, the fact that Officer Proctor ordered the defendants out of their vehicle is not sufficient to make this traffic stop unreasonable.

---

[3] The delay in this instance was not substantial and there were reasonable public safety considerations in making a traffic stop at a busy in-Town intersection.

Further, a valid traffic stop may escalate into more: "[a]fter a traffic stop that was justified at its inception, an officer who develops a reasonable articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain its occupants for further investigation." Givan, 320 F.3d at 458. "In determining whether there was a basis for reasonable suspicion, a court must consider the totality of the circumstances in light of the officer's experience." Id. (citations omitted). The court finds that here the detention of the defendants was reasonable. The throwing of the plastic bag containing white substance into the gut was action that, coupled with running a stop sign in town, caused Officer Proctor to be suspicious of criminal activity involving illegal drug activity that could possibly include other persons expected by the vehicles' occupants to come to the gut to retrieve the bag. Finding that the small plastic bag actually contained what the police believed to be crack cocaine further heightened the suspicion that criminal activity was associated with the vehicle. Then, smelling marijuana odors on the persons of defendants prior to and during the pat downs enhanced the immediacy of the connection between illegal drugs, the vehicle and its occupants. The totality of the circumstances of the traffic stop caused the officers to develop a reasonable, articulable suspicion of illegal drug activity that permitted them to expand the scope of their investigation of the vehicle and to continue to detain the defendants.

The court concludes that the traffic stop and any expansion in scope in investigatory detention were reasonable under the circumstances presented and that the officers had the requisite reasonable articulable suspicion of criminal activity to justify the detention of the vehicle and its occupants.

C. <u>Defendant Petersen has no standing to challenge the search of the vehicle.</u>

To establish standing to challenge a warrantless search, an individual must have a reasonable expectation of privacy in the property searched. <u>Baker</u>, 221 F.3d at 441. A mere passenger in an automobile who does not assert a property or possessory interest in the vehicle and cannot demonstrate a reasonable expectation of privacy in the areas of the vehicle searched does not have standing to challenge the search of the vehicle. <u>Rakas</u>, 439 U.S. at 148-149. Here, as the passenger of a vehicle rented to Dorsett's brother, Petersen has not asserted any property or possesory interest in the vehicle. Further, he has not demonstrated a reasonable expectation of privacy in the areas of the vehicle searched by the police during the stop.

D. <u>Defendant Dorsett has standing to challenge the search of the vehicle.</u>

Unlike Petersen, Dorsett does have standing to challenge the search of the vehicle. "[W]hether the driver of a car has the reasonable expectation of privacy necessary to show Fourth Amendment standing is a fact-bound question dependent on the strength of his interest in the car and the nature of his control over it; ownership is not necessary." <u>Baker</u>, 221 F.3d at 442. While the Third Circuit has not yet addressed the specific question of whether an unauthorized driver of a rental car has standing to challenge a vehicle search under the Fourth Amendment, this court finds, consistent with other district courts in the Third Circuit, that an unauthorized driver of a rental car may have such standing. <u>United States v. Dennis</u>, Criminal Action No. 06-650-01, 2007 U.S. Dist. Lexis 54526, at *13 (E.D. Pa. July 26, 2007)(collecting caselaw and analyzing which test will be adopted by the Third Circuit).

Several other Circuits have addressed this exact issue. See <u>United States v. Thomas</u>, 447

F.3d 1191 (9th Cir. 2006)(discussing Circuit split). The Fourth, Fifth and Tenth Circuits utilize a bright-line test, under which the unauthorized driver of a rental car lacks standing to challenge a search. See United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994), cert. denied, 513 U.S. 1157 (1995); United States v. Boruff, 909 F.2d 111, 117 (5th Cir. 1990); United States v. Roper, 918 F.2d 885, 887-88 (10th Cir. 1990). The Eighth and Ninth Circuits utilize a modified bright-line approach, under which an unauthorized driver may have standing to challenge the vehicle search if he or she obtained permission from the authorized driver to use the car. United States v. Thomas, 447 F.3d 1191, 1199 (9th Cir. 2006); United States v. Best, 135 F.3d 1223, 1225 (8th Cir. 1998). Last, the Sixth Circuit has utilized a totality of the circumstances approach wherein the court considers facts including "(1) whether the defendant has a driver's license; (2) the relationship between the unauthorized driver and the lessee; (3) the driver's ability to present rental documents; (4) whether the driver had the lessee's permission to use the car; and (5) the driver's relationship with the rental company." Dennis, 2007 U.S. Dist. Lexis 54526, at *14 (citing United States v. Smith, 263 F.3d 571, 586 (6th Cir. 2000)).

Consistent with other district courts within the Third Circuit, this court finds that the Third Circuit will likely adopt the modified bright-line approach or the totality of the circumstances test. Dennis, 2007 U.S. Dist. Lexis 54526, at *15; United States v. Kennedy, Criminal Action No. 06-23, 2007 U.S. Dist. Lexis 43511, at *12 (E.D. Pa. June 15, 2007)(citing Baker, 221 F.3d at 442).

The court finds that Dorsett has standing to challenge the search under either test. Dorsett had the permission of the authorized driver, his brother, to drive the vehicle, he was related to the authorized driver, had the keys to the vehicle, and had had use of the vehicle since the day before

the stop. 2007 Transcript at 172-74. The court concludes, then, that Dorsett had sufficient strength of interest in the car and control over it to have had a reasonable expectation of privacy in it under Baker.

     E.    The warrantless searches of the vehicle and of the plastic bag are permissible under the "automobile exception".

An individual's Fourth Amendment rights are protected by the requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer. California v. Carney, 471 U.S. 386, 390 (1985). There are several exceptions to this warrant requirement, including what is known as the "automobile exception". This exception provides that if a "car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (citing Carney, 471 U.S. at 393).

The court finds that the automobile exception applies to the circumstances of this case. First, the defendants' vehicle was readily mobile. Second, the officers had probable cause to believe the vehicle contained contraband, specifically illegal narcotics. Officer Proctor observed Dorsett throw a small plastic bag containing white substance from the driver's side window, a bag that Officer Vanterpool retrieved and believed, based on his experience[4], to contain crack cocaine. Officer Vanterpool shared this belief with the other officers at the scene, including Officer Brown who conducted the search of the defendants' vehicle. Officers Vanterpool and Proctor detected the odor of marijuana smoke emanating from the defendants, and, similarly, Officer Gibbons noticed the odor of marijuana coming from the defendants' vehicle. 2007

---

[4] Officer Vanterpool testified that he has 20 years experience with the Virgin Islands Police Department and that he is a supervisor. 2007 Transcript at 141.

Testimony at 68, 85, 97-98, 143-44. Officer Gibbon's testimony is corroborated by testimony given by Officer Brown at the suppression hearing on September 29, 2004 in United States v. Petersen, Criminal Number 04-04, that prior to her search of the vehicle, she detected the smell of marijuana coming from the vehicle.[5] Testimony of September 29, 2004 Suppression Hearing at 33, United States v. Petersen (Criminal Number 04-04). The smell of marijuana alone, if articulable and particularized, is sufficient to create probable cause. United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006)(internal citations omitted). Here, the police officers also saw in the dash ashtray a marijuana joint that was not then lit but had been obviously smoked. These observations occurred before Officer Brown saw and withdrew the bag from the rear seat of the vehicle, the bag that was subsequently found to contain when opened in the defendants' presence what was believed at the scene to be cocaine. The court finds that the above circumstances, considered as a whole, were sufficient to constitute probable cause to believe that contraband existed in the vehicle prior to seizure of the bag from the back seat and which made that seizure and subsequent opening reasonable.

    Having found that the automobile exception to the warrant requirement applies to the circumstances of the search in this matter, the court concludes that the search of the vehicle was reasonable, and that defendant Dorsett's motion to suppress the large plastic bag containing cocaine must be denied. In reaching this conclusion, the court has not relied on any of the following exceptions to the warrant requirement: search incident to a lawful arrest, abandonment, consent or the plain view doctrine.

---

[5] The court notes that this corroborative 2004 testimony contradicts defense counsel's argument at the 2007 suppression hearing that there was never mention of marijuana at the 2004 hearing.

F. <u>The defendants were lawfully detained and no statements were the result of custodial interrogation.</u>

Defendants argue that they were unlawfully detained and that the type and scope of the investigatory detention was not justified by any reasonable articulable suspicion of criminal activity. They further contend that the conduct of the police officers exceeded that of an investigatory stop and constituted an illegal arrest. Defendants seek suppression of any statements made by them, relying on the Fourth Amendment as well as the Fifth Amendment's protection against self-incrimination, to seek suppression of any statements made to the officers before they were advised of their <u>Miranda</u> rights. The statements in question are (1) defendant Petersen's spontaneous statement to the police while he was being patted down that he was smoking a joint, and (2) the responses defendants gave Officer Brown when she asked what was in the large plastic bag in the backseat of the vehicle. See 2007 Testimony at 100.

As discussed in detail above, the stop of the defendants' vehicle and any resulting investigatory detention were reasonable. Further, the presence of multiple police officers and vehicles, as well as the presence of police vehicles both in front of and behind the defendants' vehicle is not sufficient to characterize the seizure of the defendants as an arrest. See <u>United States v. Cook</u>, Criminal Action No. 04-414, 2005 U.S. Dist. Lexis 12239, at *27 (E.D. Pa. June 22, 2005) ("[A]n otherwise valid stop is not necessarily converted into an arrest because the officers took precautionary measures such as boxing in the suspect's car, drawing weapons, removing the suspect from the car, or placing the suspect in handcuffs. Courts have upheld such steps when reasonably necessary to protect the officers' personal safety").

The court finds that the defendants were not arrested until they were handcuffed

following the police reaching the conclusion that the contents of the large back seat bag was probably cocaine. That occurred when Officer Brown slit open one of the wrapped bricks on the hood of defendants' vehicle. Officer Vanterpool testified at the 2004 suppression hearing that he handcuffed passenger Petersen before he retrieved the bag from the gut, but not to arrest him but for his own safety, incident to a search of the person, or pat down for weapons inasmuch as Petersen smelled of marijuana. See 2004 Transcript at 73. In his 2007 testimony his best recollection was that he retrieved the crack cocaine from the gut, then Petersen was ordered out of the car before being handcuffed and the pat down for weapons occurred at a railing by the gut. 2007 Transcript at 142-44, 159-60. The court credits his 2007 testimony as being his truthful best recollection of the sequence of events. The court finds that the handcuffing for arrest purposes occurred only when the large bag of cocaine was opened. The fact that handcuffing solely for investigative reasons may have escalated into arrest reasons does not change this analysis. Further, while Officer Gibbons testified that he drew his weapon while taking cover behind his own vehicle, there is no evidence that suggests that the defendants were aware of this. Petersen's argument that Officer Gibbons had the defendants at gunpoint is an incorrect recollection of testimony, as Officer Gibbons specifically testified that while his gun was drawn, it was <u>not</u> pointed at the defendants. The protective actions by the officers were done for purposes of personal safety. This, the court finds, was reasonably necessary under the circumstances and did not elevate the stop into an arrest.

When the defendants were arrested and read their <u>Miranda</u> rights, the officers had probable cause to do so for the reasons above stated. The seizure of the defendants was reasonable under the Fourth Amendment and any statements made by defendants prior to arrest

are not required to be suppressed.

Next, the Fifth Amendment provides individuals with a right against self-incrimination. The Government is prohibited from using statements arising from custodial interrogation of a defendant unless it can demonstrate that the defendant was advised of his rights against self-incrimination. Miranda v. Ariz., 384 U.S. 436, 444 (U.S. 1966). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.

The court finds that the statements challenged by the defendants were not the products of custodial interrogation. The court finds that the defendants were not in custody until they were handcuffed and arrested with Miranda rights as above explained. While Officer Brown did ask the defendants questions about who owned the large plastic bag and/or what was in it, it was before she had examined the contents, which findings resulted in arrest. Moreover, neither defendant made an incriminating response to Officer Brown.

After examining the contents of the large bag, defendants were placed in custody and were not asked any questions thereafter.

Petersen's statement that he was smoking a joint was a spontaneous utterance made before he was in custody and not the result of questioning by an officer. 2007 Testimony at 100.

Having found that the statements in question were not the products of custodial interrogation and that the seizure of the defendants was reasonable under the Fourth Amendment, the motions to suppress the statements made by defendants are denied.

## V.   CONCLUSION

For the foregoing reasons, the Defendants' motions and supplemental motions to suppress are denied in full. Trial in this matter shall commence with jury selection on March 3, 2008 at 9:00 a.m. in St. Thomas, U.S.V.I., in the Large Courtroom.

Dated: February 27, 2008

                              JAMES T. GILES
                              UNITED STATES DISTRICT JUDGE
                              (Sitting By Designation)

A T T E S T:
WILFREDO MORALES
Clerk of the Court

By: _____
      Deputy Clerk